STATE OF MINNESOTA

IN SUPREME COURT

A14-0893

Court of Appeals                                                    Stras, J.
                                                    Concurring, Gildea, C.J.
                                       Took no part, Hudson, Chutich, JJ.


Mark R. Zweber,

                 Appellant,

vs.                                                    Filed:  July 27, 2016
                                              Office of Appellate Courts

Credit River Township, et al.,

                 Respondents.


_____


Thomas M. Fafinski, Nathan W. Nelson, Steven V. Rose, and Lesley J. Adam, Virtus Law, PLLC, Brooklyn Park, Minnesota, for appellant.

Paul D. Reuvers and Jason J. Kuboushek, Iverson Reuvers Condon, Bloomington, Minnesota, for respondents.

Anthony B. Sanders, Lee U. McGrath, and Meagan A. Forbes, Institute for Justice, Minneapolis, Minnesota; and

William R. Maurer, Institute for Justice, Bellevue, Washington, for amicus curiae Institute for Justice.

James J. Thomson, Kennedy & Graven, Chartered, Minneapolis, Minnesota, for amicus curiae Minnesota Association of Townships.


_____


1

A district court has subject-matter jurisdiction over a property owner's takings and equal-protection claims under 42 U.S.C. § 1983 (2012) when neither claim requires an examination into the validity of any quasi-judicial decisions made by a local governmental entity.

Reversed and remanded.

O P I N I O N

STRAS, Justice.

This case involves the relationship between the court of appeals' certiorari jurisdiction to review quasi-judicial decisions of local governmental entities and the broad power of Minnesota district courts to hear and determine actions brought under 42 U.S.C. § 1983 (2012), a federal civil-rights statute. Mark Zweber, an owner of a large parcel of undeveloped land, brought a section 1983 action against Scott County and Credit River Township, alleging that they had deprived him of his property without just compensation and violated his equal-protection rights. The district court concluded that it had subject-matter jurisdiction over Zweber's action, but the court of appeals reversed. According to the court of appeals, the district court lacked jurisdiction because Zweber's exclusive remedy was to seek a writ of certiorari from the court of appeals. *Zweber v. Credit River Twp.* (*Zweber II*), No. A14-0893, 2015 WL 1128985, at *1 (Minn. App. Mar. 16, 2015). Because the district court has jurisdiction over Zweber's section 1983 action, we reverse the decision of the court of appeals.

I.

Zweber owns a large parcel of undeveloped land in Credit River Township ("Township"), which is located in Scott County ("County"). Zweber contacted County officials in April 2003 to develop a plan for the development of the parcel, which he named Liberty Creek. Among other things, Zweber and the County discussed where to locate roads within the subdivision and how to stem the flow of traffic into adjoining neighborhoods. The discussions culminated in the submission of Zweber's 2006 preliminary plat application, which proposed to divide the parcel into 39 lots and 1 outlot.

The then-owner of an adjoining development known as the Territory wrote a letter to the County that criticized the Liberty Creek plan. The primary complaint was that Liberty Creek, as proposed in the preliminary plat application, would cause a substantial increase in traffic through the Territory. County officials informed Zweber that he would have to change a road connection in the proposed plat to ease the flow of traffic through the Territory.

Several months later, the Scott County Planning Commission ("Planning Commission") recommended approval of Zweber's amended plat on the condition that the Liberty Creek development occur in phases. The Scott County Board ("County Board") then imposed another condition: Zweber was required to construct a barricade at the border between Liberty Creek and the Territory that was to remain in place until the development was 90% complete. The County Board eventually approved Zweber's final plat application and the Master Developer's Agreement, the latter of which Zweber signed.

Despite the County Board's approval of the final plat, Zweber did not proceed with the Liberty Creek development. Instead, in 2008, Zweber submitted to the County an application for a proposed re-subdivision of the parcel, now called the Estates of Liberty Creek. This time, based on the recommendation of the Planning Commission, the County Board denied the application.

Zweber timely appealed the County Board's decision to the Minnesota Court of Appeals, which granted a writ of certiorari, reversed the County's decision, and ordered the County to approve Zweber's application. *Zweber v. Scott Cty. Bd. of Comm'rs* (*Zweber I*), No. A09-1990, 2010 WL 2733275, at *2, *8 (Minn. App. July 13, 2010). For over 2 years after the court of appeals' decision, the County took no formal action to approve the proposed re-subdivision.

In 2013, Zweber brought the present action, which includes claims under 42 U.S.C. § 1983, in Scott County District Court. In his amended complaint, he seeks money damages based on allegations that: (1) the County took his property without just compensation by placing conditions on the approval of his plat application; and (2) the County's treatment of him from 2006-2012, the period during which it considered his various applications, violated his equal-protection rights. Zweber also requests a writ of mandamus ordering the County to commence inverse-condemnation proceedings to compensate him for the taking.

In a motion for summary judgment, the County argued that the district court did not have subject-matter jurisdiction because Zweber's exclusive avenue for review of the County's decisions was to seek a writ of certiorari from the court of appeals. The district

4

court rejected the County's argument, concluding that it has jurisdiction over section 1983 actions. The court of appeals reversed, reasoning that the County's "plat approval subject to conditions is a quasi-judicial action, which is reviewable only by certiorari appeal within 60 days," and that Zweber's "constitutional claims are not separate and distinct from that action." *Zweber II*, 2015 WL 1128985, at *1. We granted Zweber's petition for review.

## II.

The question presented in this case is whether the court of appeals or district courts have the authority to adjudicate constitutional claims arising out of decisions made by local government entities.[1] The court of appeals concluded that it, not the district court, would have exclusive jurisdiction over both of Zweber's constitutional claims because the County's decisions on the plat and re-subdivision applications were quasi-judicial and the constitutional claims are not "separate and distinct" from them. *Zweber II*, 2015 WL 1128985, at *4-5; *see also* Minn. Stat. § 606.01 (2014) ("The party shall apply to the Court of Appeals for the writ."). The court of appeals' view is that, if resolving a constitutional claim does not "stand alone" from a quasi-judicial decision, a

---

[1]     Because the answer to this question resolves the case, we need not address Zweber's other argument that the 60-day period to issue a writ of certiorari, *see* Minn. Stat. § 606.01 (2014), is preempted by the 6-year statute of limitations for section 1983 claims, *see Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *see also* Minn. Stat. § 541.05, subd. 1(5) (2014). Accordingly, we disagree with the suggestion in the concurrence that we are deciding, implicitly or otherwise, "that some section 1983 claims . . . should be resolved by certiorari." By declining to address Zweber's preemption argument, we are simply leaving a discussion of the preemptive scope of 42 U.S.C. § 1983 for another day and a different case.

certiorari appeal is the only way to raise and preserve the constitutional claim. *Zweber II*, 2015 WL 1128985, at *4.

The parties' dispute over which court has the authority to decide Zweber's claims raises a question of subject-matter jurisdiction that we review de novo. *State v. Losh*, 755 N.W.2d 736, 739 (Minn. 2008). Subject-matter jurisdiction "refers to a court's authority 'to hear and determine a particular class of actions and the particular questions' presented to the court for its decision." *Giersdorf v. A & M Constr. Inc.*, 820 N.W.2d 16, 20 (Minn. 2012) (quoting *Robinette v. Price*, 214 Minn. 521, 526, 8 N.W.2d 800, 804 (1943)). The determination of whether a particular court has subject-matter jurisdiction depends on whether the court in question has the statutory and constitutional power to adjudicate the case. *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)); *see also Losh*, 755 N.W.2d at 739 ("Subject-matter jurisdiction is a court's power to hear and determine cases that are presented to the court.").

Minnesota's district courts are courts of general jurisdiction that have the constitutional authority to hear "all civil and criminal cases." Minn. Const. art. VI, § 3. The jurisdictional question in this case, therefore, relates to the statutory authority of district courts to hear the particular types of claims involved here: an inverse-condemnation claim and constitutional claims brought under 42 U.S.C. § 1983. We have held that review of certain decisions of local government entities are subject to review only by certiorari under Minn. Stat. § 606.01, which grants exclusive jurisdiction to the

6

court of appeals over petitions for a writ of certiorari.[2] *See, e.g.*, *Cty. of Washington v. City of Oak Park Heights*, 818 N.W.2d 533, 539 (Minn. 2012); *see also* Minn. Stat. § 606.01 (stating that parties "shall apply to the Court of Appeals" for a writ of certiorari). District courts do not have subject-matter jurisdiction over claims that must be resolved in a certiorari appeal. *See Dokmo v. Indep. Sch. Dist. No. 11*, 459 N.W.2d 671, 676-78 (Minn. 1990) (holding that a declaratory-judgment action in district court is unavailable when review of a quasi-judicial decision is available by certiorari).

The proceedings conducted by local government entities can result in two types of decisions, the categorization of which determines whether review by certiorari is obligatory. The first type of decision is legislative. Decisions are legislative if they have broad applicability and "affect the rights of the public generally." *Cty. of Washington*, 818 N.W.2d at 539. A legislative decision can be reviewed by filing a summons and

---

[2] The concurrence conflates two separate questions. The question that the court of appeals answered, and on which we granted review, was whether Minnesota law *required* Zweber to bring his constitutional claims in a petition for a writ of certiorari—that is, whether certiorari review is *exclusive* under the facts of this case. The question that the concurrence apparently answers is whether certiorari review is *available*, which is a question that no one asks us to address. For instance, the concurrence "base[s] [its] conclusion on the *availability* of a statutory remedy" and concludes "that certiorari review by the court of appeals *was not available* to Zweber because he has a statutory remedy under 42 U.S.C. § 1983 for the alleged violation of his constitutional rights." (Emphases added.) *See, e.g.*, *Nelson v. Schlener*, 859 N.W.2d 288, 292 (Minn. 2015) ("Therefore, if [a statute] provides a specific process for review, certiorari review by the court of appeals is not *available*." (emphasis added)). Yet the court of appeals already answered the question resolved by the concurrence—whether certiorari review was available to Zweber—when it ordered the County to approve Zweber's re-subdivision application in the 2010 certiorari appeal. *Zweber I*, 2010 WL 2733275, at *8. Contrary to the concurrence's argument, therefore, certiorari review was not only theoretically available to Zweber, he actually received it.

complaint in district court. *See id.* If the County's decisions on Zweber's plat and re-subdivision applications were legislative, the district court would have jurisdiction to review the decisions themselves and any derivative constitutional claims. *See Dead Lake Ass'n, Inc. v. Otter Tail Cty.*, 695 N.W.2d 129, 134-35 (Minn. 2005).

The other possibility is that the County's decisions were quasi-judicial, which would have made them reviewable only through the filing of a petition for a writ of certiorari with the court of appeals. Minn. Stat. § 606.01; *see Cty. of Washington*, 818 N.W.2d at 539 (recognizing that the "quasi-judicial decisions of a municipality are reviewable only by certiorari"). In general, quasi-judicial decisions "affect the rights of a few individuals analogous to the way they are affected by court proceedings." *Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs*, 617 N.W.2d 566, 574 (Minn. 2000). In this case, even if the decisions of the County were quasi-judicial, as the court of appeals concluded, it is still possible that the district court would have jurisdiction to adjudicate the derivative constitutional claims pleaded in Zweber's amended complaint.

The court of appeals recognized such a possibility, but applied a test requiring the constitutional claims to be "separate and distinct" from the County's quasi-judicial decisions for the district court to have jurisdiction. *Zweber II*, 2015 WL 1128985, at *4. This test, first articulated by the court of appeals in *City of Minneapolis v. Meldahl*, 607 N.W.2d 168, 172 (Minn. App. 2000), requires derivative claims to be raised in a petition for a writ of certiorari when "an inquiry into the facts surrounding" the claims would "involve an inquiry into" the quasi-judicial decisions themselves. *See Zweber II*, 2015 WL 1128985, at *4. *Meldahl* involved a decision by the City of Minneapolis to

8

demolish a building that it considered a nuisance. 607 N.W.2d at 170. The court of appeals concluded that the owner of the building could not bring an inverse-condemnation action against the City. *Id.* at 172. Instead, the owner was required to "assert that a taking occurred . . . through petition for a writ of certiorari to [the court of appeals]." *Id.* In this case, the court of appeals extended the rule from *Meldahl* to divest district courts of jurisdiction over all constitutional claims, including those brought under 42 U.S.C. § 1983, that are not "separate and distinct" from a quasi-judicial decision. *See Zweber II*, 2015 WL 1128985, at *4-5.

We decline to adopt the "separate and distinct" test from *Meldahl*.[3] In fact, the resolution of this case does not require us to announce a new rule at all, as an existing rule fully addresses the allocation of jurisdiction between district courts and the court of appeals in cases involving quasi-judicial decisions. In *County of Washington*, we addressed "whether certiorari review" was the "exclusive method" to review a city council's denial of a request for a refund of an alleged overpayment for sewer and water services. 818 N.W.2d at 536. We explained that the district court did not have subject-matter jurisdiction over an unjust-enrichment claim brought by the county because "the outcome of the claim" depended "upon the validity of [a] . . . quasi-judicial decision." *Id.*

---

[3] It is true that we characterized the defamation claims from *Willis v. County of Sherburne*, as "separate and distinct" from the County's decision to terminate Willis's employment. 555 N.W.2d 277, 282 (Minn. 1996). But we used the phrase to describe the relationship between Willis's defamation claims and the County's termination decision, not to announce a new test. In fact, the next sentence in *Willis*, which examines whether the defamation claims would require "an inquiry into the county board's discretionary decision to terminate Willis," is the closest we came to announcing a test. 555 N.W.2d at 282-83.

9

at 542.  Under the rule from *County of Washington*, "[w]hen the underlying basis of the claim requires review of a municipality's quasi-judicial decision to determine its validity"—that is, whether the decision was unreasonable, arbitrary, or capricious—then the "exclusive method of review is by certiorari under chapter 606."  *Id.*; *see also Williams v. Smith*, 820 N.W.2d 807, 814 (Minn. 2012) (concluding that a tort claim that "[did] not involve any inquiry into" a government entity's employment decision was not subject to certiorari review); *Dietz v. Dodge Cty.*, 487 N.W.2d 237, 239 (Minn. 1992) (stating that a court conducting certiorari review determines whether a decision "was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it").  If resolution of the claim does not depend on the validity of the quasi-judicial decision, then the party may raise the claim by filing an action in a district court.  *Cty. of Washington*, 818 N.W.2d at 542.

The rule we announced in *County of Washington* is consistent with another of our decisions, *Willis v. County of Sherburne*, 555 N.W.2d 277 (Minn. 1996).  In *Willis*, we addressed whether a county employee who had been terminated could bring a separate action for defamation in district court when the defamatory statements were related to the employee's dismissal.  *Id.* at 278-79.  Based on the requirement that review of quasi-judicial decisions be by certiorari, we determined that the court of appeals was the exclusive venue to review the termination decision itself, regardless of whether the employee framed the claim as one for wrongful termination or breach of contract.  *See id.* at 280, 282.  Notably, however, we reached a different conclusion with respect to Willis's defamation claim, reasoning that whether the County knew the statements were false

before publishing them to a third party would "not involve any inquiry into the county board's discretionary decision to terminate Willis." *Id.* at 282-83. Accordingly, like *County of Washington*, *Willis* stands for the proposition that an aggrieved party may bring a claim in district court arising out of a local governmental entity's quasi-judicial decision so long as adjudication of the claim does not require an inquiry into the validity of the decision.

The concurrence would embrace a rule that neither party urges us to adopt. Under the concurrence's rule, a party may file a petition for a writ of certiorari to review a local governmental entity's quasi-judicial decision only when an adequate remedy at law is unavailable. Aside from creating a conflict with the rule from *County of Washington*, 818 N.W.2d at 542, a long line of cases casts doubt on the concurrence's proposed rule.[4] In *Dokmo v. Independent School District No. 11*, for example, we concluded that the

---

[4]     The concurrence criticizes us for failing to adopt *Meldahl*'s "separate and distinct" test, which it says we "have already adopted." We disagree. Our view, which finds support in both *Willis* and *Williams*, is that we used the phrase "separate and distinct" to describe the relationship between the claims in those cases and the underlying quasi-judicial decisions, not to announce a new test. In fact, in both cases, we used the phrase "separate and distinct" together with the test we apply today from *County of Washington*. *Williams*, 820 N.W.2d at 814 ("We conclude that a tort claim, such as for negligent misrepresentation, that is 'separate and distinct' from the government agency's employment decision and does not involve any inquiry into the agency's 'discretionary decision' is not subject to certiorari review."); *Cty. of Washington*, 818 N.W.2d at 542; *Willis*, 555 N.W.2d at 282-83. What is most puzzling about the concurrence's criticism, however, is that, of all the tests, *Meldahl* is *least* compatible with the concurrence's rule, which would allow a claim to be brought in district court whenever an adequate remedy at law exists, regardless of whether the claim is "separate and distinct" from a quasi-judicial decision. The concurrence's rule, in other words, would substantially narrow the circumstances in which certiorari review is available, which is exactly the opposite of how the *Meldahl* test operates. *See Meldahl*, 607 N.W.2d at 172-73.

11

"only method of appealing" a school board's decision to deny a teacher's reinstatement request was "by writ of certiorari." 459 N.W.2d at 673. We reached this conclusion despite the fact that the teacher who challenged the school board's decision indisputably had an adequate statutory remedy: a declaratory-judgment action. *See id.* at 676-77. By seeking a declaratory judgment, a remedy at law, the teacher who sought reinstatement in *Dokmo* could have vindicated her rights in district court. Yet in reiterating the exclusive nature of certiorari, we emphasized that our "decisions express far more than a preference" toward certiorari review. *Id.* at 674; *see also Tischer v. Hous. & Redev. Auth. of Cambridge*, 693 N.W.2d 426, 427, 431-32 (Minn. 2005) (stating that review of a termination decision was exclusively by certiorari even though Tischer sued for breach of an employment contract under Minn. Stat. § 469.014 (2014)); *Moberg v. Indep. Sch. Dist. No. 281*, 336 N.W.2d 510, 519 (Minn. 1983) ("[A] writ of certiorari is the proper form of action for challenging a school closing decision, rather than the declaratory judgment action brought in this case."). Based on *Dokmo*, therefore, as well as *County of Washington*, *Willis*, and *Williams*, we reject the concurrence's proposed rule for determining the exclusivity of certiorari review.

The rule from these cases is that certiorari review is exclusive when a claim requires an inquiry into the validity of a quasi-judicial decision. *See Cty. of Washington*, 818 N.W.2d at 542; *Willis*, 555 N.W.2d at 282; *Dokmo*, 459 N.W.2d at 676-77. In applying this rule, we acknowledge that there is some overlap in the facts underlying Zweber's constitutional claims and the County's decisions on Zweber's plat and re-subdivision applications. Nevertheless, the presence of overlap is not enough; the claims

12

themselves need not be completely separate and distinct for the district court to have jurisdiction over them. Rather, it is sufficient if the constitutional claims do not require the district court to examine the validity of the County's decisions.

The takings claim does not require an examination into the validity of the County's decisions because it actually assumes their validity. The takings claim, as Zweber pleads it, presupposes that the conditions placed on his plat application were valid, but alleges that they "constitute[d] a taking [for] which [he] must be compensated." To adjudicate this claim, the fact-finder will have to determine whether the conditions placed on Zweber's plat application constituted a regulatory taking of his property. If it did, then Zweber will be entitled to damages or a writ of mandamus ordering the initiation of inverse-condemnation proceedings against the property.

We reach the same conclusion on Zweber's equal-protection claim. Zweber alleges differential treatment by the County and the Township "in comparison to similarly situated property owners." The facts underlying the equal-protection claim span approximately 6 years, extending to the period both before and after the County's decisions on his plat and re-subdivision applications. *See Willis*, 555 N.W.2d at 282 (noting that the events supporting Willis's defamation claim began over a year before the County's quasi-judicial decision to terminate him). Like the takings claim, Zweber does not seek reversal or modification of the County's quasi-judicial decisions. In fact, the complaint makes clear that development of the parcel is no longer feasible and seeks only money damages for the wrongs allegedly committed by the County. Adjudicating

Zweber's equal-protection claim therefore does not depend "upon the validity of the [County's] quasi-judicial decision." *Cty. of Washington*, 818 N.W.2d at 542.

The constitutional claims in this case stand in contrast to the claims from *Dietz*. *Dietz* involved claims for "wrongful discharge" and "unlawful discrimination" arising out of Dodge County's decision to terminate Dietz's employment. 487 N.W.2d at 238. In her complaint, Dietz sought "compensatory damages, reinstatement, and damages for mental anguish." *Id.* We observed, especially in light of the reinstatement request, that "[t]he cause of action alleged in Dietz's complaint would require the rights and liabilities of the parties to be fixed not by the terms of the contract, but by the propriety of the county's exercise of discretion in terminating her." *Id.* at 240; *Willis*, 555 N.W.2d at 282 ("Just as in *Dietz*, Willis requests reinstatement, back pay, lost fringe benefits, and front pay."). Accordingly, we held that Dietz "was obliged to seek judicial review of the county's termination decision by writ of certiorari." *Dietz*, 478 N.W.2d at 240; *cf. Nw. College v. City of Arden Hills*, 281 N.W.2d 865, 868 (Minn. 1979) (stating that this court, not the district court, should independently review a city council's zoning decision and concluding that the denial of a building permit was "arbitrary").

Unlike the wrongful-discharge and unlawful-discrimination claims in *Dietz* and *Willis*, the "rights and liabilities" of the parties in this case are not "fixed by the propriety of the [C]ounty's decision" to deny Zweber's plat and re-subdivision applications. *Willis*, 555 N.W.2d at 282. Each of Zweber's constitutional claims can be adjudicated without inquiring into the validity of the County's decisions. Indeed, Zweber does not request injunctive relief seeking to "undo" the County's decisions, which contrasts sharply with

the reinstatement requests made in *Dietz* and *Willis*. *See Dietz*, 487 N.W.2d at 240 ("[Dietz's] request for reinstatement and damages for mental anguish highlights the fact that her claim is not an ordinary action for failure to perform on a contract for goods or services."); *Willis*, 555 N.W.2d at 282. And Zweber does not use "creative pleading" to bring a veiled challenge to the validity of the County's decisions. *Cty. of Washington*, 818 N.W.2d at 542.

The County nevertheless raises a public-policy objection to allowing Zweber's claims to proceed. The County complains that dividing the review of quasi-judicial decisions and the adjudication of any derivative claims unnecessarily subjects local governmental entities to expanded liability and protracted proceedings. The County instead suggests that the better procedure would have been for Zweber to have first argued in a petition for a writ of certiorari that the conditions placed on approval of his plat were unconstitutional, and then, if the court of appeals had accepted his argument, subsequently pursued a takings claim in district court. However, nothing in Minn. Stat. § 606.01, nor in our case law, suggests that such an approach is required.

The County also fails to explain how the court of appeals can adjudicate constitutional claims of the type presented here, which ordinarily involve conflicting evidence and disputed facts. After all, a writ of certiorari is "not a writ upon which to try issues," *State v. Canfield*, 166 Minn. 414, 415, 208 N.W. 181, 181 (1926), and the court of appeals, as an appellate tribunal, cannot weigh evidence as a trier of fact, *Nelson*, 859 N.W.2d at 294. Accordingly, the County's objection does not change our conclusion that, regardless of whether the County's decisions on the plat and re-subdivision

15

applications were legislative or quasi-judicial, the district court has jurisdiction to adjudicate Zweber's constitutional claims.

III.

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.[5]

Reversed and remanded.

HUDSON, J., took no part in the consideration or decision of this case.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[5] We acknowledge that the district court will likely need to make a decision on Zweber's inverse-condemnation claim before it can adjudicate his section 1983 takings claim. *See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985) (holding that a party's section 1983 takings claim is not ripe "until it has used the procedure [provided by the state] and been denied just compensation").

CONCURRENCE

GILDEA, Chief Justice (concurring).

I agree with the majority that the district court has subject-matter jurisdiction over a property's owner's takings and equal protection claims under 42 U.S.C. § 1983 (2012). The majority holds that "certiorari review is exclusive when a claim requires an inquiry into the validity of a quasi-judicial decision." While this factor may be relevant, I believe that the majority misapplies this factor in this case and that the analysis of the jurisdiction question is otherwise incomplete. I conclude, in accordance with long-established legal principles, that the constitutional claims are not subject to certiorari review because the property owner has a statutory remedy outside the certiorari process. Therefore, I respectfully concur.

Following years of failed efforts to develop his property in Credit River Township, Mark Zweber brought this action in Scott County District Court. Zweber asserted claims under 42 U.S.C. § 1983, alleging that (1) Scott County violated his equal protection rights by intentionally treating him differently from similarly situated property owners, and (2) Scott County took his property without just compensation by imposing improper conditions on the approval of his plat application. Zweber sought damages under section 1983 for the alleged violation of his rights under the Equal Protection Clause of the Fourteenth Amendment and the Takings and Just Compensation Clauses of the Fifth Amendment. He also sought a writ of mandamus under Minn. Stat. §§ 586.01–.12 (2014) to compel the commencement of eminent domain proceedings.

C-1

At issue here is the subject-matter jurisdiction of the district court over Zweber's constitutional claims. Although we have distinguished between legislative and quasi-judicial decisions in resolving questions of subject-matter jurisdiction, *see, e.g.*, *Dead Lake Ass'n, Inc. v. Otter Tail Cty.*, 695 N.W.2d 129, 134-35 (Minn. 2005), we have long held that "[t]he writ of certiorari is an 'extraordinary' remedy that 'is not granted where there is an adequate remedy in the ordinary course of the law,' " *Nelson v. Schlener*, 859 N.W.2d 288, 292 (Minn. 2015) (quoting *Aastad v. Bd. of Cty. Comm'rs*, 260 Minn. 357, 359, 110 N.W.2d 19, 20 (1961)); *see also State v. Bd. of Pub. Works of City of Red Wing*, 134 Minn. 204, 205, 158 N.W. 977, 977 (1916) ("Certiorari will not lie if the relators have other adequate remedy."). And we have specifically recognized that "[c]ertiorari is appropriate to review quasi-judicial proceedings only where there is no appeal and no other adequate remedy." *White Bear Rod & Gun Club v. City of Hugo*, 388 N.W.2d 739, 741 (Minn. 1986).

The majority does not address whether Zweber has an adequate legal remedy, and the majority rejects "the 'separate and distinct' test" applied by the court of appeals, *Zweber v. Credit River Twp.*, No. A14-0893, 2015 WL 1128985, at *4 (Minn. App. Mar. 16, 2015). Instead, the majority announces a single, simple rule: "certiorari review is exclusive when a claim requires an inquiry into the validity of a quasi-judicial decision." In previous appeals involving issues of jurisdiction, we have considered whether "the underlying basis of the claim requires review of a municipality's quasi-judicial decision to determine its validity." *Cty. of Washington v. City of Oak Park Heights*, 818 N.W.2d 533, 542 (Minn. 2012); *see also Willis v. Cty. of Sherburne*,

555 N.W.2d 277, 282-83 (Minn. 1996). But we also have considered whether the claims are "separate and distinct." *Williams v. Smith*, 820 N.W.2d 807, 814 (Minn. 2012). In *Williams*, we held that a tort claim that "is 'separate and distinct' from the government agency's employment decision and does not involve any inquiry into the agency's 'discretionary decision' is not subject to certiorari review." *Id.* In fact, we specifically concluded that a negligent misrepresentation claim, brought by a candidate for an assistant basketball coach position at the University of Minnesota, was not subject to certiorari review "because it is *separate and distinct* from the University's decision not to hire him." *Id.* at 815 (emphasis added). Thus, the majority "decline[s] to adopt" a test we have already adopted.[1]

In any event, the majority resolves this appeal based on the conclusion that Zweber's constitutional claims do not require an examination into the validity of the County's quasi-judicial decisions. The majority explains that "if an aggrieved party's claim requires a court to inquire into the validity of a quasi-judicial decision—that is, whether the decision was unreasonable, arbitrary, or capricious—then the party may raise such a claim only in a petition for a writ of certiorari filed with the court of appeals."

---

[1]    The majority recognizes that "we characterized the defamation claims from *Willis v. County of Sherburne*, as 'separate and distinct' from the County's decision to terminate Willis's employment" in deciding that they were not subject to certiorari review. 555 N.W.2d at 282. Nonetheless, the majority explains that "we used the phrase to describe the relationship between Willis's defamation claims and the County's termination decision, not to announce a new test." That may be true, but in *Williams*, we explained that we were "exten[ding] . . . our reasoning in *Willis*" in concluding that a tort claim was not subject to certiorari review where the claim was "separate and distinct" from the University's employment decision. *Williams*, 820 N.W.2d at 814.

C-3

According to the majority, adjudicating Zweber's constitutional claims does not require a court to inquire into the validity of the County's quasi-judicial decisions because Zweber is not challenging the validity of those decisions. For example, with regard to the takings claim, the majority indicates that the complaint "actually assumes [the] validity" of the County's decisions. The majority also determines that adjudicating Zweber's constitutional claims does not depend upon the validity of the County's quasi-judicial decisions because Zweber is not seeking to "undo" those decisions; rather, he is seeking only money damages.

I do not construe Zweber's claims the same way as the majority. Zweber's complaint focuses on the conditions the County imposed on the development of his property, including the imposition of the barricade conditions, as well as his allegations that the County treated him differently from similarly situated property owners. Among other claims, Zweber alleges that (1) the "imposition of the barricade conditions constitutes an arbitrary, irrational, capricious, illegal and unconstitutional act"; and (2) the conditions the County placed upon his property throughout the development process were "unenforceable," "illegal," without a "rational basis," "wholly arbitrary," and motivated by the "malicious or bad faith intent to injure Zweber." I have difficulty seeing how the resolution of these claims would not require a court to inquire into the validity of the County's decisions to determine whether the decisions were unreasonable, arbitrary, or capricious. The fact that Zweber is seeking money damages, and not the reversal or modification of the County's quasi-judicial decisions, goes to the remedy, not the nature of the claims. Zweber is seeking money damages because development of the

C-4

property is no longer feasible as a result of the "arbitrary conditions" the County imposed. As the majority recognizes, Zweber is seeking "money damages for the wrongs allegedly committed by County." A court would have to determine that the County committed "wrongs" before awarding money damages for those wrongs. Consequently, the majority's conclusion that the constitutional claims do not require an inquiry into the validity of a quasi-judicial decision is based on the false premise that Zweber's complaint "assumes that the conditions placed on his plat application were valid."

Notwithstanding my disagreement with the majority's analysis, I conclude that the district court has subject-matter jurisdiction over Zweber's constitutional claims. I base my conclusion on the availability of a statutory remedy. As a threshold matter, "a writ of certiorari will not be issued where the party may have adequate relief against the grievance of which he complains, and it should not be allowed or issued when there is a remedy by appeal, or some other mode of review." *State ex rel. Wischstadt v. Olson*, 56 Minn. 210, 212-13, 57 N.W. 477, 477 (1894). In other words, the law does not permit two remedies. *See id.* at 213, 57 N.W. at 477. If a statute "provides a specific process for review, certiorari review by the court of appeals is not available." *Nelson*, 859 N.W.2d at 292.[2]

---

[2]     The majority contends that I am answering the wrong question. Specifically, the majority says that the issue in the case is whether certiorari review is the exclusive remedy for the constitutional claims, not whether certiorari review is available. In my view, the distinction the majority attempts to make is not meaningful. Obviously, if, as I conclude, certiorari review is not available, then certiorari review does not offer any remedy for the constitutional claims, exclusive or non-exclusive.

Accordingly, I would resolve this appeal by holding that certiorari review by the court of appeals was not available to Zweber because he has a statutory remedy under 42 U.S.C. § 1983 for the alleged violation of his constitutional rights. It is well settled that federal and state courts have concurrent jurisdiction over constitutional claims arising under section 1983. *Maine v. Thiboutot*, 448 U.S. 1, 3 n.1 (1980); *see also Haywood v. Drown*, 556 U.S. 729, 735 (2009) (noting that "state courts as well as federal courts are entrusted with providing a forum for the vindication of federal rights violated by state or local officials acting under color of state law"). Therefore, because a section 1983 action is available to challenge the constitutionality of the County's actions, certiorari review is not appropriate to decide the constitutional claims. *See, e.g.*, *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414 (Minn. 1981) (stating that certiorari "is considered an extraordinary remedy to redress obvious defects of justice for which no ordinary remedy is available").

We reached a similar result in *Willis*, 555 N.W.2d at 283, where we addressed whether the district court had subject-matter jurisdiction over a county employee's disability discrimination claim under the Minnesota Human Rights Act. *See* Minn. Stat. § 363A.08, subd. 3 (2014). We concluded that the disability discrimination claim belonged in the district court because of the availability of "a statutory cause of action" under the Minnesota Human Rights Act, "even though prosecution of the alleged violation of the Minnesota Human Rights Act may implicate at least some aspects of the decision to discharge." 555 N.W.2d at 283. I see no reason to treat the availability of a

statutory cause of action under 42 U.S.C. § 1983, a federal civil rights statute, differently from a statutory cause of action under the Minnesota Human Rights Act.

Moreover, the "limited and deferential" nature of certiorari review is not compatible with judicial review of alleged constitutional violations by county officials under 42 U.S.C. § 1983. *Williams*, 820 N.W.2d at 813; *see Tischer v. Hous. & Redev. Auth. of Cambridge*, 693 N.W.2d 426, 429 (Minn. 2005) (explaining that quasi-judicial decisions of executive bodies are "granted deference by the judiciary to avoid usurpation of the executive body's administrative prerogatives"). Further, the litigation of most constitutional claims will involve conflicting evidence and disputed facts; however, a writ of certiorari is "not a writ upon which to try issues." *State v. Canfield*, 166 Minn. 414, 415, 208 N.W. 181, 181 (1926) ("No evidence is taken, no findings of fact or conclusions are made, and there is no judgment in the usual sense."). The court of appeals does not weigh evidence as a trier of fact. *Nelson*, 859 N.W.2d at 294. Therefore, regardless of the other obstacles to jurisdiction in the court of appeals, constitutional claims simply are not suited to certiorari review in the court of appeals.[3]

---

[3] In addition, there are constitutional concerns associated with the majority's implicit determination that some section 1983 claims—those that do challenge the validity of a county's decisions—should be resolved by writ of certiorari. *See Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n.2 (8th Cir. 1995) (cautioning that a Minnesota state court's ruling that a section 1983 claim "may not be brought in the state trial court, and presumably must therefore be appended to a certiorari proceeding in the state appellate court, may well be suspect under the Supremacy Clause" and *Felder v. Casey*, 487 U.S. 131, 138 (1988)); *cf. Haywood v. Drown*, 556 U.S. 729, 740 (2009) (holding that a state "is not at liberty to shut the courthouse door to federal claims that it considers at odds with its local policy" by channeling section 1983 claims against state correction officers into a court of claims with limited remedies and strict procedural

(Footnote continued on next page.)

The majority does not consider the availability of a statutory cause of action. Not only is the availability of a statutory cause of action omitted from the majority's analysis, but the majority affirmatively rejects the rule that "a party may file a petition for a writ of certiorari to review a local governmental entity's quasi-judicial decision only when an adequate remedy at law is unavailable." But this rule is not a new rule or a "proposed rule." This rule has been an essential part of our jurisprudence on the availability of certiorari review for nearly 100 years. *E.g.*, *State v. Bd. of Pub. Works*, 134 Minn. 204, 205, 158 N.W. 977, 977 (1916) ("Certiorari will lie to review the quasi judicial proceedings of municipal boards only when there is no right of appeal and no other adequate remedy.", *quoted in Aastad v. Bd. of County Comm'rs*, 260 Minn. 357, 359, 110 N.W.2d 19, 21 (1961)); *see also Cty. of Washington v. City of Oak Park Heights*, 818 N.W.2d 533, 539 (Minn. 2012) ("*When a statutory right to review a municipal body's quasi-judicial decision is lacking*, we have concluded that certiorari is an appropriate, or the exclusive, method to seek judicial review." (emphasis added)).

The majority suggests that we have impliedly abrogated this longstanding rule by sustaining certiorari review of certain quasi-judicial decisions, even though the plaintiffs in those cases had sought to bring actions under Minnesota's Declaratory Judgments Act, Minn. Stat. §§ 555.01–.16 (2014). *E.g.*, *Dokmo v. Indep. Sch. Dist. No. 11*, 459 N.W.2d

---

(Footnote continued from previous page.)
requirements). In any event, "[t]he deprivation of state court subject matter jurisdiction in § 1983 suits does not affect the federal district court's original jurisdiction." *Charchenko*, 47 F.3d at 983. Accordingly, the majority's holding may also undermine the federal aim of uniform treatment of section 1983 cases in federal and state courts. *See Wilson v. Garcia*, 471 U.S. 261, 279 (1985).

671, 677 (Minn. 1990); *Moberg v. Indep. Sch. Dist. No. 281*, 336 N.W.2d 510, 519 (Minn. 1983). The majority's reliance on these cases is misplaced because there was no statutory right of review in those cases. A declaratory judgment action "is a procedural device through which parties may vindicate substantive legal rights." *Weavewood, Inc. v. S & P Home Inv., LLC*, 821 N.W.2d 576, 577 (Minn. 2012). And "the underlying substantive law . . . forms the foundation for a declaratory judgment action." *Id.* at 579 (stating that "a complaint requesting declaratory relief must present a substantive cause of action that would be cognizable in a nondeclaratory suit" (citation omitted) (internal quotation marks omitted)). In the cases the majority cites, there was no statutory substantive law providing for review of the school board decisions and the individuals challenging the school board decisions did not have an adequate legal remedy; certiorari review was therefore available. *See Dokmo*, 459 N.W.2d at 677 (holding that a declaratory judgment action is not a proper procedure for challenging school board decisions); *Moberg*, 336 N.W.2d at 519 (concluding that a declaratory judgment action is not "the proper form of action for challenging a school closing decision"). In this case, by contrast, the claims are grounded in statute, 42 U.S.C. § 1983, and there is an adequate remedy at law.[4]

---

[4] The general availability of a declaratory judgment action in the municipal zoning context precludes certiorari review because the Legislature has provided for judicial review of zoning decisions of cities, towns, and county boards of adjustment in the district court. *See* Minn. Stat. § 394.27, subd. 9 (2014) (providing that any person aggrieved by a decision of a county board of adjustment has the right to appeal to the district court); Minn. Stat. § 462.361, subd. 1 (2014) (providing that "[a]ny person aggrieved by a decision of a governing body or board of adjustments and appeals" acting

(Footnote continued on next page.)

In sum, I would hold that the district court has subject-matter jurisdiction over Zweber's constitutional claims, without any inquiry into whether resolution of the claims requires an examination into the validity of the County's decisions. I rely instead on our well-established law holding that certiorari review is not available for statutory causes of action.

---

(Footnote continued from previous page.)
pursuant to the Municipal Planning Act may have the decision "reviewed by an appropriate remedy in the district court"). Based on these statutes, the "general rule" is that "even quasi-judicial zoning actions should be reviewed in district court, not by certiorari review in the court of appeals." *Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs*, 617 N.W.2d 566, 574 n.5 (Minn. 2000); *see Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 178 (Minn. 2006) (stating that "the proper procedure for reviewing a city's decision in a zoning matter generally will be a declaratory judgment action" (footnote omitted)). The quasi-judicial zoning decisions of Scott County at issue here happen to fall within "a narrow exception to that general rule," which "exists because the legislature has not provided for judicial review of zoning decisions of county boards." *Interstate Power Co.*, 617 N.W.2d at 574 n.5. Consequently, the majority's broad rule that "certiorari review is exclusive when a claim requires an inquiry into the validity of a quasi-judicial decision" does not account for matters where there is a statutory cause of action or a statutory right of review.