STATE OF MINNESOTA

IN SUPREME COURT

A13-0936

Court of Appeals                                                              Gildea, C.J.

Chad Nelson,

                    Respondent Below,

vs.                                                                    Filed: February 11, 2015
                                                                       Office of Appellate Courts

Troy Schlener, Respondent,

Carla Brown, et al., Respondents Below,

Minnesota Department of Human Services,

                    Appellant.

_____

Seth Leventhal, Leventhal PLLC, Minneapolis, Minnesota, for respondent.

Alan I. Gilbert, Solicitor General, Alethea M. Huyser, Kathryn A. Fodness, Assistant Attorneys General, Saint Paul, Minnesota, for appellant.

Cort C. Holten, Jeffrey D. Bores, Chestnut Cambronne PA, Minneapolis, Minnesota, for amicus curiae Minnesota Police and Peace Officers Association Legal Defense Fund.

_____

S Y L L A B U S

Because the "trier of fact" that determines whether a state employee was acting within the scope of employment under Minn. Stat. § 3.736, subd. 9 (2014), is not the

1

court of appeals or the agency, the court of appeals did not have subject matter jurisdiction over a petition for writ of certiorari seeking review of the agency's decision.

Vacated.

O P I N I O N

GILDEA, Chief Justice.

This action arises from a putative class action that Chad Nelson filed against respondent Troy Schlener in federal court. In his complaint, Nelson alleged that Schlener, a former employee of appellant the Minnesota Department of Human Services ("DHS"), had violated the federal Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 (2014).[1] Schlener sought defense and indemnification from DHS pursuant to Minn. Stat. § 3.736, subd. 9 (2014). DHS denied his request, concluding that Schlener's actions were outside the scope of his employment. Schlener filed a petition for a writ of certiorari with the Minnesota Court of Appeals, seeking review of DHS's decision. The court of appeals, holding that DHS's decision was not supported by substantial evidence, reversed and directed DHS to grant Schlener's request. *Nelson v. Schlener*, No. A13-0936, 2014 WL 502975 (Minn. App. Feb. 10, 2014). Because we conclude that the court of appeals did not have subject matter jurisdiction over Schlener's petition for a writ of certiorari, we vacate the court of appeals' decision.

---

[1]     18 U.S.C. § 2721 prohibits a state department of motor vehicles, and its officers and employees, from knowingly disclosing or making available any individual's personal information, except for use in connection with certain specified functions. 18 U.S.C. § 2724 (2014) creates a civil cause of action for a violation of section 2721.

2

The record reflects that Troy Schlener was employed as a member of the background study research staff of DHS. After discovering that Schlener was accessing the Driver and Vehicle Services ("DVS") records system frequently, DHS conducted an audit of Schlener's searches. The report from that audit found that Schlener had searched DVS's driver's license database for at least 1,964 driver's license numbers and 1,274 names between June 1, 2010 and June 2, 2011.[2] Following the audit, Schlener's employment at DHS ended.

In July 2011 DHS sent a letter to Chad Nelson informing him that his DVS records had been accessed, without authorization, by a former DHS employee. The letter stated that the records of approximately 1,100 Minnesotans were viewed over the course of 11 months. Nelson subsequently filed a putative class action in the United States District Court for the District of Minnesota, alleging that Schlener accessed records without authorization in violation of the DPPA, 18 U.S.C. § 2721.[3] On April 2, 2013,

---

[2] The court of appeals excluded the audit request and audit report from the record because DHS did not timely file the documents under Minn. R. Civ. App. P. 115.04, subd. 3. DHS now argues that the court of appeals erred in excluding these documents. Given our resolution of the case on jurisdictional grounds, it is not necessary for us to resolve this issue.

[3] Nelson's Second Amended Complaint in the federal action named several State entities and employees as defendants, and included claims under 42 U.S.C. § 1983 (2014); a claim under the Minnesota Government Data Practices Act, Minn. Stat. § 13.05, subd. 3 (2014); and a claim for common-law invasion of privacy. The federal district court dismissed all claims against all defendants except for two counts against Schlener. *Nelson v. Jesson*, No. 13-340, 2013 WL 5888235 (D. Minn. Nov. 1, 2013). Schlener is the only remaining defendant in the underlying federal case, which has been stayed pending resolution of this appeal.

Schlener requested that DHS provide defense and indemnification for Nelson's lawsuit, pursuant to Minn. Stat. § 3.736 (2014).

On April 23, 2013, DHS's chief financial and operating officer responded to Schlener's defense and indemnification request, stating that DHS was considering denying "certification" of Schlener's request on the ground that Schlener's conduct was outside the scope of his employment. In response, Schlener explained the basis for his request for defense and indemnification, and asked DHS to reconsider its position.

As part of DHS's consideration of Schlener's request for defense and indemnification, an employee in the office of the inspector general of DHS's licensing division provided additional information to DHS personnel regarding Schlener's searches for people named Chad Nelson, as well as searches for other individuals with the last name "Nelson." This employee reviewed Schlener's searches over a 2-month period in 2011 of several different people with the name "Chad Nelson." Even though Schlener was running searches on the name "Chad Nelson" in 2011, the employee concluded that DHS had not conducted a background study on anyone named Chad Nelson since 2008. Based on this review, the employee concluded that Schlener's access to the information about "Chad Nelson" was "not within the scope of his employment as a background study research staff."

On May 6, 2013, DHS's chief compliance officer formally notified Schlener that his request for defense and indemnification was denied based on DHS's conclusion that Schlener acted outside the scope of his employment. In response to an inquiry from

4

Schlener's attorney, the compliance officer confirmed that DHS's decision was final and that there was no internal appeal process.

On May 24, 2013, Schlener filed a petition for a writ of certiorari with the court of appeals, requesting judicial review of DHS's decision. *Nelson v. Schlener*, No. A13-0936, 2014 WL 502975, at *2 (Minn. App. Feb. 10, 2014). The court of appeals concluded there was insufficient evidence to support DHS's decision that Schlener's actions were outside the scope of his employment, and therefore remanded the matter to DHS with instructions to grant Schlener's request. *Id.* at *5, *8. We granted DHS's petition for review on two issues: whether the court of appeals had jurisdiction to review DHS's denial of Schlener's request for defense and indemnification; and, if so, whether the court of appeals erred in requiring DHS to grant defense and indemnification.

I.

We begin with the issue of subject matter jurisdiction, which is a question of law that we review de novo. *In re Civil Commitment of Giem*, 742 N.W.2d 422, 425-26 (Minn. 2007). For the first time on appeal, DHS asserts that the court of appeals lacked jurisdiction to review DHS's decision to deny Schlener's request for defense and indemnification. Schlener does not argue that DHS's jurisdictional argument has been waived. Indeed, defects in subject matter jurisdiction can be raised at any time and cannot be waived by the parties. *Seehus v. Bor-Son Constr., Inc.*, 783 N.W.2d 144, 147 (Minn. 2010).

5

The issue presented by DHS's challenge to subject matter jurisdiction is whether Schlener could obtain review of DHS's decision through a petition for a writ of certiorari filed in the court of appeals. DHS argues that certiorari review is inconsistent with Minn. Stat. § 3.736, subd. 9. Specifically, DHS notes that the statute provides a process for determining whether an employee was acting within the scope of employment and that this process requires review by a "trier of fact." DHS contends that the court of appeals is not a "trier of fact." Because the statute provides for review of an agency's decision by a "trier of fact," DHS argues that review through a writ of certiorari is inconsistent with the statute.

For his part, Schlener argues that the court of appeals had subject matter jurisdiction. Schlener relies on *State v. Tokheim*, 611 N.W.2d 375 (Minn. App. 2000). In *Tokheim*, the court of appeals held that decisions under Minn. Stat. § 3.736, subd. 9, "are quasi-judicial and therefore review is exclusively by writ of certiorari to [the court of appeals]." 611 N.W.2d at 378. We agree with DHS that a petition for a writ of certiorari does not provide the court of appeals with jurisdiction to review DHS's decision.

We have held that certiorari review is available "absent statutory authority for a different process." *Willis v. Cnty. of Sherburne*, 555 N.W.2d 277, 282 (Minn. 1996); *see also In re Occupational License of Haymes*, 444 N.W.2d 257, 259 (Minn. 1989) (holding that an aggrieved party has the right to petition for a writ of certiorari "[w]here no right of discretionary review has been provided by statute or appellate rules"). The writ of certiorari is an "extraordinary" remedy that "is not granted where there is an adequate

remedy in the ordinary course of the law." *Aastad v. Bd. of Cnty. Comm'rs*, 260 Minn. 357, 359, 110 N.W.2d 19, 20 (1961). Therefore, if section 3.736 provides a specific process for review, certiorari review by the court of appeals is not available.

Whether the process in Minn. Stat. § 3.736, subd. 9, is consistent with certiorari review in the court of appeals presents a question of statutory interpretation that we examine de novo. *See Clark v. Lindquist*, 683 N.W.2d 784, 785 (Minn. 2004). Our objective is to ascertain and effectuate the intent of the Legislature. Minn. Stat. § 645.16 (2014). If a statute is susceptible to only one reasonable interpretation, we interpret the statute according to its plain meaning. *State v. Nelson*, 842 N.W.2d 433, 436 (Minn. 2014); *see also City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 755 (Minn. 2013) ("When legislative intent is clear from the statute's plain and unambiguous language, we interpret the statute according to its plain meaning . . . .").

Under Minn. Stat. § 3.736, subd. 9, the State must "defend, save harmless, and indemnify" state employees against costs and judgments "in connection with any tort, civil, or equitable claim or demand . . . arising out of an alleged act or omission occurring during the period of employment . . . if the employee was acting within the scope of employment." The statute provides that a State employee is "conclusively presumed to have been acting within the scope of employment if the employee's appointing authority issues a certificate to that effect." *Id.* But the appointing authority's determination that an employee was acting within the scope of employment "may be overruled by the attorney general." *Id.* Finally, under the statute:

> The determination of whether an employee was acting within the scope of employment is a question of fact to be determined by the trier of fact based upon the circumstances of each case:
>
>> (i) in the absence of a certification,
>> (ii) if a certification is overruled by the attorney general,
>> (iii) if an unfavorable certification is made, or
>> (iv) with respect to an elected official.
>
> The absence of the certification or an unfavorable certification is not evidence relevant to a determination by the trier of fact.

*Id.*

The statute essentially provides a three-step process for determining whether an employee's actions were within the scope of employment, and therefore subject to defense and indemnification. First, "an employee is conclusively presumed to have been acting within the scope of employment if the employee's appointing authority issues a certificate to that effect." *Id.* Second, the appointing authority's decision to certify that the employee was acting within the scope of employment "may be overruled by the attorney general." *Id.* Third, if the appointing authority does not certify, or issues an unfavorable certification, or, if the attorney general overrules a certification decision, "the determination of whether an employee was acting within the scope of employment is a question of fact *to be determined by the trier of fact* based upon the circumstances of each case." *Id.* (emphasis added). The jurisdictional dispute in this case requires us to interpret the phrase "trier of fact."

The Legislature did not define "trier of fact" in Minn. Stat. § 3.736.[4] In the absence of a statutory definition, we generally give statutory terms their common meaning. *State v. Rick*, 835 N.W.2d 478, 483 (Minn. 2013). Further, when determining the meaning of language in a statute, we analyze the provision in context. *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 278 (Minn. 2000).

Although the multi-word phrase "trier of fact" is not defined in non-legal dictionaries, we can rely on the meaning of its component terms. *See KSTP-TV v. Ramsey Cnty.*, 806 N.W.2d 785, 790 (Minn. 2011). The *American Heritage Dictionary* defines "trier" as "[o]ne who examines and settles a case; a judge or juror." *American Heritage Dictionary* 1911 (3d. ed. 1996). The same dictionary defines "fact" as "[i]nformation presented as objectively real." *Id.* at 653. *Merriam-Webster's*, meanwhile, defines "try" as "to examine or investigate judicially" and "to conduct the trial of," *Merriam-Webster's Collegiate Dictionary* 1265 (10th ed. 2001), and "fact" as "a piece of information presented as having objective reality." *Id.* at 415. When we consider the plain meaning of its component parts, "trier of fact" means a body that examines, investigates, and rules on factual issues in a trial-like proceeding. The meaning of "trier of fact" from legal dictionaries is in accord with this plain meaning interpretation. *See Black's Law Dictionary* 711 (10th ed. 2014) (defining "trier of fact"

---

[4] Other terms are defined, such as "state," "employee of the state," and "scope of office or employment." Minn. Stat. § 3.732, subd. 1 (2014).

as "[o]ne or more persons who hear testimony and review evidence to rule on a factual issue . . . in a judicial proceeding").[5]

Applying the plain meaning of trier of fact, it is clear that the court of appeals is not a trier of fact. We have held that "[t]he function of the court of appeals is limited to identifying errors and then correcting them." *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988); *see also Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn. 2002) (concluding that the court of appeals erred because it "weighed the evidence as a trier of fact instead of analyzing the issue properly under the supported by substantial evidence standard of review").

Schlener does not argue that the court of appeals is the "trier of fact" under Minn. Stat. § 3.736, subd. 9. He argues instead that certiorari review of the agency's decision is proper because the agency (DHS in this case) is the "trier of fact" contemplated in the statute, and that therefore a petition for a writ of certiorari provides the proper vehicle for the court of appeals to review the agency's decision. An agency, like DHS, may have the opportunity to investigate facts when presented with a request for defense and indemnification. But the agency does not act as a "trier" that conducts a proceeding to

---

[5]     The entry for "trier of fact" in this dictionary redirects the reader to "fact-finder." *Black's Law Dictionary* 1738 (10th ed. 2014). The definition for "fact-finder" is "One or more persons who hear testimony and review evidence to rule on a factual issue. The fact-finder may be the judge (in a bench trial) or a jury." *Id.* at 711. The definition then lists alternate terms, including "finder of fact; fact-trier or trier of fact (*in a judicial proceeding*)." *Id.* (emphasis added).

10

decide a "question of fact" based on "the circumstances of each case." *See* Minn. Stat. § 3.736, subd. 9.

The agency, as the employee's appointing authority, has the opportunity under the statute to certify that the employee's conduct was within the scope of employment. *Id.* It is only after the employer does not so certify, or the attorney general overrules the employer's certification, that the "trier of fact" is called upon to make the scope-of-employment determination. *Id.* If the "trier of fact" is simply the employer again, the employer's initial certification decision is superfluous, and the attorney general's authority to overrule the employer's certification is essentially meaningless. Our obligation, however, is to read the statute so that all of the statute's terms are effective. *See Baker v. Ploetz*, 616 N.W.2d 263, 269 (Minn. 2000) ("A statute should be interpreted, whenever possible, to give effect to all of its provisions, and no word, phrase, or sentence should be deemed superfluous, void, or insignificant." (internal quotation marks omitted)).

Moreover, the term "trier of fact" implies an objective determination by a neutral party weighing competing factual claims. It is difficult to view the agency as an objective trier of fact when it made the scope-of-employment decision in the first instance. The Legislature also uses different words to describe the responsibilities of the trier of fact and those of the employer-agency. The Legislature uses the word "case" when describing the trier of fact's responsibilities, and the words "claim" and "demand" to describe the issues for which an employee can seek defense and indemnification. *See*

11

Minn. Stat. § 3.736, subd. 9. When the Legislature uses different words, we normally presume that those words have different meanings. *Dereje v. State*, 837 N.W.2d 714, 720 (Minn. 2013). The Legislature's use of the word "case" when describing the trier of fact's activities, and its use of the words "claim" and "demand" when describing the employer-agency's responsibilities, confirms the legislative intent that the "trier of fact" and the employer-agency are distinct entities that play different roles in the context of requests for defense and indemnification.

Based on this analysis, Schlener's reading of "trier of fact" to include the employer-agency is simply not a reasonable interpretation of the statute. Instead, as used in the statute, the plain meaning of "trier of fact" refers to a fact-finding body such as a district court. This is a common role for a district court, often recognized by our court as a trier of fact.[6] *See In re Civil Commitment of Ince*, 847 N.W.2d 13, 23-24 (Minn. 2014) ("As the trier of fact, the district court will be in the best position to determine the weight

---

[6] By referring to the "district court," we do not suggest that *state* district courts must resolve all disputes over requests for defense and indemnification. It may be most economical for the court hearing the underlying case to also review the indemnification issue, and when, as here, the underlying cause of action is in federal court, the federal district court may be the proper trier of fact as long as that court has subject matter jurisdiction. An employee may assert his indemnification claim via cross-claim or impleader in the case. *See, e.g.*, Minn. R. Civ. P. 13, 14 (cross-claims and third-party practice); Fed. R. Civ. P. 13, 14 (cross-claims and third-party practice). Alternatively, as appropriate an employee may bring a declaratory judgment action on the scope-of-employment question. *See, e.g.*, Minn. Stat. § 555.01 (2014) ("Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations . . . ."); 28 U.S.C. § 2201(a) (2014) ("[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . .").

12

to be attributed to each factor . . . ."); *State v. Bradley*, 264 N.W.2d 387, 387 (Minn. 1978) ("Defendant was found guilty by the district court, acting as trier of fact . . . ."); *City of Mounds View v. Walijarvi*, 263 N.W.2d 420, 425 (Minn. 1978) ("That issue remains for the trier of fact in the district court.").

In reaching this conclusion, we recognize that *State v. Tokheim*, 611 N.W.2d 375 (Minn. App. 2000), decided otherwise. In *Tokheim*, the court of appeals concluded that the agency responding to a request for defense and indemnification investigated the facts and the disputed claim, applied a prescribed standard, and reached a binding decision, all hallmarks of a decision reviewable by certiorari. *Id*. at 378. We disagree with *Tokheim's* conclusion. The plain language of the statute contemplates a *non-binding* decision by the agency, because the "attorney general" may "overrule[]" that decision and the "trier of fact" must make the final determination in certain circumstances. *See* Minn. Stat, § 3.736, subd. 9. *Tokheim,* therefore, was incorrectly decided.

In sum, the plain language of Minn. Stat. § 3.736, subd. 9, provides for a right of review by a trier of fact. The "trier of fact" is not the employing agency or an appellate court.[7] Because there is "statutory authority for" a review process, *Willis*, 555 N.W.2d

---

[7] The parties agree that this is not a "contested case" under the Administrative Procedure Act, Minn. Stat. § 14.02, subd. 3 (2014). We therefore do not consider whether the Office of Administrative Hearings (OAH) could have a role as the trier of fact under Minn. Stat. § 3.736, subd. 9. We likewise do not consider, because the parties do not address it, whether a non-judicial body, such as a contractually agreed-upon grievance panel, could properly act as the trier of fact under the statute.

13

at 282, certiorari review is not available. We therefore hold that the court of appeals did not have jurisdiction to hear Schlener's petition for a writ of certiorari.

II.

Because he relied on the court of appeals' decision in *Tokheim*, which we now overrule, Schlener argues that we should apply our decision prospectively and not apply it to Schlener. Our decisions generally apply to the litigants in the case. *State v. Baird*, 654 N.W.2d 105, 110 (Minn. 2002). We have, however, adopted the Supreme Court's special-circumstances test for deciding if, and when, we should make an exception to this rule. *See Hoff v. Kempton*, 317 N.W.2d 361, 363 (Minn. 1982) (quoting *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971)). But we also observed in *Hoff* that " '[a] court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may *never* be made prospective only.' " 317 N.W.2d at 364 (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981)) (emphasis added).

Schlener argues that we should nonetheless reach the merits of his appeal in the interests of judicial economy, citing *White Bear Rod & Gun Club v. City of Hugo*, 388 N.W.2d 739 (Minn. 1986). There, we said, "While we conclude that henceforth an aggrieved person should seek relief first in the district court, judicial economy dictates in this instance that we reach the merits of the . . . appeal." *Id.* at 742. But in *White Bear Rod & Gun Club*, we concluded that even though "review is more efficiently conducted in the district court," the court of appeals still had "jurisdictional capacity." *Id.*

14

In this case, by contrast, we conclude that the court of appeals did not have jurisdiction over Schlener's petition for a writ of certiorari. Further, because the court of appeals would exercise review of a district court decision by, for example, a notice of appeal, *see* Minn. R. Civ. App. P. 103.01, subd. 1, it does not have concurrent jurisdiction over decisions made under Minn. Stat. § 3.736, subd. 9. Put simply, because the court of appeals did not have jurisdiction, it did not have authority to hear this appeal, its decision on the merits cannot stand, and we cannot deem our decision on the court of appeals' lack of jurisdiction prospective only. *See Hoff*, 317 N.W.2d at 364.[8]

Vacated.

---

[8] Although not mentioned in his brief, Schlener's counsel suggested at oral argument that the U.S. Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* supports Schlener's claim that this decision should apply prospectively only. 458 U.S. 50, 87-88 (1982). The Court in *Northern Pipeline* held that the Bankruptcy Reform Act's broad grant of jurisdiction to bankruptcy judges was unconstitutional, but concluded that its decision would apply only prospectively. *Id.* The Court applied the *Chevron* special-circumstances test without discussing the *Firestone* rule that a jurisdictional ruling may never be made prospective only. *Id. Northern Pipeline* overturned an entire statutory jurisdictional scheme as unconstitutional, *id.* at 87, whereas *Firestone* concluded that the federal court of appeals lacked jurisdiction under a statute. 449 U.S. at 379-80. This case is much more similar to *Firestone*, and we therefore follow the *Firestone* rule and conclude that our decision must apply to Schlener. Although this conclusion does not benefit Schlener, he may still be able to seek a scope-of-employment determination in the district court, which can act as the trier of fact and fairly weigh all of the relevant evidence.