*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0608**

In the Matter of:
City of Minneapolis,
Respondent,

vs.

Blayne Lehner,
Relator.

**Filed January 3, 2017
Affirmed
Peterson, Judge**

City of Minneapolis

Susan L. Segal, Minneapolis City Attorney, Trina R. Chernos, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Joseph A. Kelly, Patrick J. Kelly, Kevin M. Beck, Kelly & Lemmons, P.A., Little Canada, Minnesota (for relator)

Considered and decided by Peterson, Presiding Judge; Larkin, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

 **PETERSON**, Judge

In this certiorari appeal, relator-police officer asks us to reverse respondent-city's decision not to defend and indemnify him against federal civil-rights claims brought by a detainee who was injured when relator kicked him in the face while on duty. We affirm.

## FACTS

In the early morning hours of December 29, 2013, relator Blayne Lehner was on duty as a patrol officer with the Minneapolis Police Department. Lehner responded to the scene of a traffic stop to assist other officers with the stop. A passenger in the stopped vehicle, later identified as Luis Garcia, was under the influence of alcohol and uncooperative; officers handcuffed Garcia behind his back, placed him in the back of a police squad car, and closed the squad car's door.

Moments later, Garcia began kicking and flailing around in the back of the squad car. After about 20 seconds, Garcia stopped moving and sat normally; Lehner approached the car, opened its door, and told Garcia to stop kicking. According to Lehner, Garcia then "turn[ed], look[ed], lift[ed] his leg up, kick[ed] at [Lehner], miss[ed] [Lehner's] knee, . . . hook[ed] his [own] leg with the door open[,] and br[ought] his other leg up." Garcia's "hooked" leg was outside the door frame "essentially from the ankle down." Lehner "s[aw] [Garcia] kind of rear up again for another kick," so Lehner "decided to do [a] push kick" to Garcia's chest to "get him back into the car." As Lehner started to kick, Garcia "lean[ed] forward" quickly, and "the bottom of [Lehner's] foot hit[] Garcia's face." Lehner's kick "pushed [Garcia's] whole body back," and Lehner "slammed the door shut."

After noticing that Garcia was not moving, Lehner opened the squad car's door again and, with the assistance of another officer, removed Garcia from the car and put him face-down on the ground. While Garcia was on the ground, Lehner "may have put . . . [his] knee on [Garcia's] shoulder blade to hold him down." Garcia was conscious when the officers removed him from the car and put him on the ground. When Lehner stood

2

Garcia up to put him back into the squad car, the officers saw blood on the ground and blood coming from Garcia's mouth or lip. The officers called a supervisor to the scene, reported Lehner's use of force and Garcia's apparent injury, and took Garcia to a hospital for medical treatment. Garcia was treated for injuries including fractures of his jaw and nose, two dislodged teeth, and a laceration on his lip.

On August 5, 2015, Garcia brought an action against Lehner and respondent City of Minneapolis in federal district court (federal action), alleging that Lehner's conduct on December 29, 2013, violated Garcia's civil rights. Lehner timely submitted to the Minneapolis City Attorney a request that the city defend and indemnify him in the federal action. The next day, the city attorney notified Lehner of the city's decision not to defend or indemnify him in the federal action. The decision was based on the city's determination that "[Lehner's] conduct f[e]ll[] within the exceptions contained in Minn. Stat. § 466.07."[1] The city attorney also informed Lehner that he could challenge that determination by

---

[1] That statute provides in relevant part:

> [A] municipality or an instrumentality of a municipality shall defend and indemnify any of its officers and employees, whether elective or appointive, for damages, including punitive damages, claimed or levied against the officer or employee, provided that the officer or employee:
> > (1) was acting in the performance of the duties of the position; and
> > (2) was not guilty of malfeasance in office, willful neglect of duty, or bad faith.

Minn. Stat. § 466.07, subd. 1 (2016).

requesting "a hearing to determine whether the City has an obligation to defend and indemnify [him]." Lehner timely requested such a hearing.

On November 12, 2015, an administrative law judge (ALJ) conducted a hearing to review the initial defense-and-indemnification decision; at the day-long hearing, the parties were represented by counsel who presented arguments, witness testimony, and documentary evidence. On February 24, 2016, the ALJ issued a 27-page document that included 69 numbered findings of fact and conclusions of law and a recommendation that the Minneapolis City Council affirm the initial defense-and-indemnification decision (recommendation document).

On March 14, 2016, the city attorney provided a copy of the recommendation document to each member of the city council and to the mayor; the city attorney also submitted to a committee of the city council a request for affirmance of the initial defense-and-indemnification decision. The same day, Lehner's attorney presented oral argument before the committee, which made a report to the city council. On March 18, the city council affirmed the initial defense-and-indemnification decision, "adopting the relevant factual bases as set forth in numbers 1-36, 40-43 and 63-65" of the recommendation document, and the mayor approved the city council's action.

On April 15, 2016, Lehner obtained a writ of certiorari for this court's review of the city's defense-and-indemnification decision. On May 6, this court issued an order directing the parties to file informal memoranda addressing jurisdiction over Lehner's certiorari appeal. After the parties filed informal memoranda addressing the jurisdictional issue, this court issued a May 25 order deferring a ruling on the jurisdictional issue and making this

4

case a companion case to *Anzures v. Ward*, ___ N.W.2d ___, No. A16-0739, slip op. (Minn. App. Jan. 3, 2017), which presented a related jurisdictional question.

## D E C I S I O N

*Jurisdiction*

In the May 6, 2016 order, this court articulated the jurisdictional issue in two parts:

> (a) Is the city's March 18, 2016 denial of defense and indemnification under Minn. Stat. § 466.07 a final decision reviewable by certiorari, or may [Lehner] raise the defense and indemnification issue in the [federal] action?
>
> (b) If [Lehner] has another legal remedy to challenge the city's denial of defense and indemnification, is review by certiorari available?

*City of Minneapolis v. Lehner*, No. A16-0608 (Minn. App. May 6, 2016) (order). "The writ of certiorari is an extraordinary remedy that is not granted where there is an adequate remedy in the ordinary course of the law." *Nelson v. Schlener*, 859 N.W.2d 288, 292 (Minn. 2015) (quotation omitted); *see also City of Hibbing v. Baratto*, 620 N.W.2d 58, 60 (Minn. App. 2000) (stating that "certiorari is an extraordinary writ that is appropriate only when no other review is authorized by law" (citing *White Bear Rod & Gun Club v. City of Hugo*, 388 N.W.2d 739, 741 (Minn. 1986))). Accordingly, the answer to part (b) is clear: If Lehner has another legal remedy to challenge the city's defense-and-indemnification decision, then review by certiorari is not available.

To answer part (a), we first must determine whether the city's defense-and-indemnification decision is a quasi-judicial decision. *See County of Washington v. City of Oak Park Heights*, 818 N.W.2d 533, 539 (Minn. 2012) (stating that "[appellate courts]

5

have consistently limited review of quasi-judicial decisions of cities and counties to certiorari review . . . unless judicial review is otherwise expressly authorized by statute"). The three characteristics of a quasi-judicial decision are "(1) an investigation into a disputed claim and the weighing of evidentiary facts; (2) the application of those facts to a prescribed standard; and (3) a binding decision regarding a disputed claim." *Rochester City Lines, Co. v. City of Rochester*, 868 N.W.2d 655, 662 (Minn. 2015), *cert. denied* 136 S. Ct. 849 (2016).

The parties agree that the city's defense-and-indemnification decision is a quasi-judicial decision. In making its decision, the city used a process that (1) began with a day-long hearing before an ALJ, during which the parties were represented by counsel and called witnesses, introduced documentary evidence, and made arguments; (2) advanced to the ALJ's issuance of the lengthy recommendation document, which included findings of fact and conclusions of law; and (3) culminated in the city council's affirmance of the initial defense-and-indemnification decision.

That decision process was consistent with the city's written policy on defense and indemnification, which expressly states that "a final decision" on defense and indemnification is made by the city council following the ALJ's posthearing recommendation. And Minnesota law authorized the city's use of the ALJ to conduct the hearing and produce the recommendation document. *See* Minn. Stat. § 14.55 (2016) (providing that "political subdivisions of the state may contract with the chief [ALJ] for the purpose of providing [ALJ]s . . . for administrative proceedings" and that "the [ALJ]'s duties . . . may include the preparation of findings, conclusions, or a recommendation for

6

action by the political subdivision"). We conclude that the city's defense-and-indemnification decision was a quasi-judicial decision. *See County of Washington*, 818 N.W.2d at 541 (concluding that city's denial of county's utility reimbursement claim was quasi-judicial decision, reasoning in part that city had "statutory authority to provide [utility] services" and that city's written policy characterized its "three-part procedure for appealing utility charges" as mandatory and provided that city council made "the final determination on appeals" in part three of procedure (quotation omitted)).

We therefore complete our analysis by applying this court's holding in *Anzures*, slip op. at 13, that when a city's decision that an employee is not entitled to defense and indemnification by the city under Minn. Stat. § 466.07, subd. 1, meets the requirements for a quasi-judicial decision, the exclusive method to challenge the decision is by a writ of certiorari. We conclude that the city's decision that Lehner is not entitled to defense and indemnification by the city is a quasi-judicial decision, and this court has jurisdiction over Lehner's certiorari appeal.

*Merits*

"[An appellate court] review[s] a quasi-judicial decision rendered by a city under a limited and nonintrusive standard of review." *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 635 (Minn. 2012) (quotation omitted); *see also Gustafson v. Comm'r of Human Servs.*, 884 N.W.2d 674, 686 (Minn. App. 2016) (referring to "limited, deferential nature of certiorari review" of quasi-judicial decision). "Under that standard, [an appellate court] may not substitute [its] own findings of fact for those of a city, or engage in a de novo review of conflicting evidence." *Sawh*, 823 N.W.2d at 635; *see also Staeheli v. City of St.*

*Paul*, 732 N.W.2d 298, 303 (Minn. App. 2007) (stating that "a reviewing court . . . will not retry facts or make credibility determinations"). "Instead, [an appellate court] must uphold a city's decision if the city has explained how it derived its conclusion and the city's conclusion is reasonable on the basis of the record." *Sawh*, 823 N.W.2d at 635 (quotation omitted).

Lehner first asks us to reverse the city's defense-and-indemnification decision as arbitrary and capricious. According to Lehner,

> the City's decision to not defend and indemnify is based exclusively upon the specific factual bases set forth in paragraphs 1-36, 40-43 and 63-65. The[se] . . . factual findings . . . are effectively rendered meaningless and, in turn, the [city's defense-and-indemnification decision] is arbitrary because (i) the ALJ's credibility determinations were not adopted; and (ii) the ALJ's legal justification for denying defense under Minn. Stat. § 466.07 [was] not adopted.

The city responds that the city council expressly adopted the specified factual bases and implicitly adopted the associated conclusions of law and recommendation.

Both Lehner and the city focus on the language of the city council's affirmance of the initial defense-and-indemnification decision and cite principles of statutory construction in support of their respective interpretations of that language. But the city council's affirmance of the initial defense-and-indemnification decision was not a legislative act; rather, it was a single event in a larger process that ended in the city's quasi-judicial decision to deny Lehner's request for defense and indemnification. We do not review any particular event that occurred during the city's decision process; rather, we review the decision that resulted from the process.

8

In conducting this review, we consider the record that was before the city council on March 18, 2016, when it affirmed and thereby made final the initial defense-and-indemnification decision. *See Reiling v. City of Eagan*, 664 N.W.2d 403, 408 (Minn. App. 2003) ("The reviewing court may consider only the evidence in the record before [a city] when [its quasi-judicial] decision was made." (citing *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn. 1992))). The record before the city council included the official record of the proceedings before the ALJ, the ALJ's 27-page recommendation document, the city attorney's committee request for affirmance of the initial defense-and-indemnification decision, Lehner's attorney's oral argument before the committee, and the committee's report to the city council.

On that record, the city council affirmed the initial defense-and-indemnification decision "pursuant to Minn. Stat. sec. 466.07 subd. 1" and adopted specific "factual bases" in support of the city's prior determination that "[Lehner's] conduct f[e]ll[] within the exceptions contained in Minn. Stat. § 466.07." The city council thereby implicitly accepted the ALJ's credibility determinations, notwithstanding its selective adoption of the ALJ's factual findings. *Cf. Vang v. A-1 Maint. Serv.*, 376 N.W.2d 479, 480 (Minn. App. 1985) (stating in syllabus that "[a] specific finding regarding the credibility of the witnesses was unnecessary, where such finding was implicit in [administrative agency's] decision").

The city council's adopted factual findings included the following:

> 3. Since his hire into the Minneapolis Police Department (MPD) nearly 17 years ago, [Lehner] has participated in a 16-week course at the Minneapolis Police Academy and in training provided by the MPD several times annually . . . .

9

4. [Lehner] testified that he received training regarding "push kicks" at . . . the Minneapolis Police Academy. . . .

. . . .

7. MPD Policy 5-300, titled "Code of Conduct and Use of Force Policy," . . . [states that] "sworn MPD employees shall only use the amount of force that is objectively reasonable in light of the facts and circumstances known to that employee at the time force is used. The force used shall be consistent with MPD training." . . .

. . . .

12. On June 26, 2002, [Lehner] signed a document indicating as follows: "I understand that I am accountable for knowing and abiding by all policies and procedures contained within the Minneapolis Policy and Procedure Manual and that I will be held accountable for abiding by the policies and procedures contained therein."

. . . .

15. MPD Deputy Chief Travis Glampe has never heard of a "push kick," and he has never instructed anyone at the Minneapolis Police Academy to train on that maneuver.

16. [MPD] does not train its police officers to kick someone back into a squad car.

. . . .

30. [On December 29, 2013, while confined in the back of a squad car,] Mr. Garcia started to kick against the partition and bang his head on the bars on the right rear side of the squad car.

. . . .

32. Once Mr. Garcia had stopped flailing and was "sitting there normal" and "not kicking anymore," [Lehner]

10

opened the squad's rear passenger door and told Mr. Garcia to stop kicking.

33. [Lehner] testified that Mr. Garcia then "lifts his leg up, kicks at me, misses my knee, hooks his leg, . . . with the door open and brings his other leg up while he is sitting [restrained by] handcuffs behind his back, and now I think he is going to kick me again or try to get out."

34. [Lehner] intended to kick Mr. Garcia, a flailing individual who was handcuffed and confined in the back seat of a police car and kicking in the direction of an officer who had just opened the car door.

35. [Lehner] testified that he then attempted to "push kick" Mr. Garcia in the chest but, because Mr. Garcia was flailing, [Lehner] missed his intended target and kicked Mr. Garcia in the face.

36. With one kick, [Lehner] impacted Mr. Garcia's face with sufficient force to fracture his jaw, fracture his nose and sinuses, lacerate his lower lip, dislodge two teeth, and cause him to lose consciousness "for a second."

These factual findings support a determination that Lehner's December 29, 2013 conduct constituted "malfeasance in office, willful neglect of duty, or bad faith," a statutory exception to the city's duty to defend and indemnify Lehner in the federal action. *See* Minn. Stat. § 466.07, subd. 1(2). We therefore conclude that the city's defense-and-indemnification decision was not arbitrary and capricious. *See Moreno v. City of Minneapolis*, 676 N.W.2d 1, 7 (Minn. App. 2004) (stating that a city's quasi-judicial "decision is unreasonable, or arbitrary and capricious[,] when it is based on whim or devoid of articulated reasons" and that "[a] court is obligated to affirm the decision if the record shows the city engaged in reasoned decision making" (quotation omitted)).

11

Lehner next asks us to reverse the city's defense-and-indemnification decision as unsupported by substantial evidence. Despite this argument's label as attacking the evidentiary support for the defense-and-indemnification decision, the argument's substance is almost identical to Lehner's previous argument: Lehner questions the city council's affirmance of the initial defense-and-indemnification decision "without discussion or explanation" and its failure to "discuss or articulate any rationale . . . for adopting only specific portions of the . . . recommendation [document]." These purported deficiencies in one event in the city's decision process do not alter the evidentiary support for the city's defense-and-indemnification decision.

As noted by the city, Lehner has not identified a single factual finding that lacks evidentiary support in the record. We nevertheless have inspected the record that was before the city council when it affirmed the initial defense-and-indemnification decision, and we are satisfied that each of the adopted factual findings is supported by substantial evidence. *See In re N. Metro Harness, Inc.*, 711 N.W.2d 129, 137 (Minn. App. 2006) (stating that quasi-judicial decisions are reviewed for substantial evidence, defined as "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety" (quotation omitted)), *review denied* (Minn. June 20, 2006).

Finally, Lehner appears to assign legal error to the city's decision process itself, suggesting that a city's decision whether to defend its employee against a lawsuit must be made on the basis of "the factual allegations contained within the four corners of the

12

underlying complaint," while the city's decision whether to indemnify the employee against any resulting judgment against him may be made with consideration of "the facts developed at trial." In advancing this argument, Lehner makes no attempt to justify his reliance on cases that involved an insurer's common-law duties to defend and indemnify its insured, even though the case before us involves a municipality's statutory duties to defend and indemnify its employee.

In any event, the language of section 466.07 makes no distinction between a municipality's duty to defend and its duty to indemnify, instead providing that "a municipality . . . shall defend and indemnify any of its . . . employees . . . for damages . . . claimed . . . against [him]" so long as he "was acting in the performance of the duties of the position" and "was not guilty of malfeasance in office, willful neglect of duty, or bad faith." Minn. Stat. § 466.07, subd. 1. The only reasonable interpretation of this statutory language is that the city must either defend *and* indemnify its employee or, if it determines that at least one of the exceptions applies, the city need not defend *or* indemnify its employee. We may not "add words or phrases to an unambiguous statute," *County of Dakota v. Cameron*, 839 N.W.2d 700, 709 (Minn. 2013), and we must "interpret the statute according to its plain meaning." *Nelson*, 859 N.W.2d at 292. We conclude that Lehner's legal-error argument is meritless.

**Affirmed.**

13