# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-0739

Elisea Cervantes Anzures,
Plaintiff,

vs.

Michele Leann Ward,
Respondent,

City of Saint Paul,
Appellant.

**Filed January 3, 2017**
**Reversed**
**Peterson, Judge**

Washington County District Court
File No. 82-CV-15-4451

Erin F. Musland, Francis J. Rondoni, Chestnut & Cambronne PA, Minneapolis, Minnesota; and

Keith J. Kerfeld, Tewksbury & Kerfeld, Minneapolis, Minnesota (for respondent)

Samuel J. Clark, St. Paul City Attorney, K. Meghan Kisch, Assistant City Attorney, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Larkin, Judge; and Kirk, Judge.

## S Y L L A B U S

When a municipality's decision that an employee is not entitled to defense and indemnification under Minn. Stat. § 466.07, subd. 1 (2016), meets the requirements for a quasi-judicial decision, a writ of certiorari is the exclusive method by which to challenge the decision.

**O P I N I O N**

**PETERSON**, Judge

Appellant-city challenges the district court's denial of its motion to dismiss respondent-police officer's cross-claim seeking defense and indemnification, arguing that the district court erred by determining that it had subject-matter jurisdiction to review the city's decision that respondent is not entitled to defense and indemnification under Minn. Stat. § 466.07, subd. 1. Because the city's decision was a quasi-judicial decision and no right of review in the district court is provided by statute or appellate rule, the district court lacked subject-matter jurisdiction. We reverse.

**FACTS**

In August 2009, appellant City of St. Paul employed respondent Michele Leann Ward, n/k/a Michele Giampolo, as a police officer. While on patrol duty, Ward received permission from her supervisor to run a personal errand. While running the errand, Ward drove her city-issued squad car at a speed of about 70 miles per hour in a 30 mile-per-hour speed zone and crashed into a vehicle that crossed in front of the squad car at an intersection.

Ward was charged with misdemeanor speeding and misdemeanor careless driving. Ward entered an *Alford* plea[1] to the speeding charge, and the careless-driving charge was

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37-38, 91 S. Ct. 160, 167-68 (1970) (holding that, in some circumstances, a court may accept a defendant's guilty plea even though she maintains her innocence).

2

dismissed. Although Ward entered an *Alford* plea, she responded affirmatively to the following question: "You're pleading guilty because you are guilty, correct?"

About five years later, plaintiff Elisea Cervantes Anzures sued Ward and the city, alleging that she was the driver of the vehicle that Ward's squad car struck and that she sustained bodily injury as a result of Ward's negligence. Interim City Attorney Laura Pietan notified Ward that she was conducting an assessment to determine whether the city would defend and indemnify Ward against the lawsuit. Pietan requested a meeting with Ward to discuss the matter and gave Ward an opportunity to submit written material relevant to the determination before the meeting. Ward declined to meet with Pietan or submit any written materials, stating that her recollection of the accident was "very foggy" and that Pietan should rely on the statements Ward made immediately after the accident.

In an April 10, 2015 letter, Pietan notified Ward that she had determined that Ward was not acting in performance of her duties as a police officer when the accident occurred and that Ward acted with malfeasance, willful neglect of duty, or bad faith. Therefore, under Minn. Stat. § 466.07, subd. 1, Ward was not entitled to defense and indemnification by the city. In making the determination, Pietan considered documentary and other recorded evidence, including (1) incident reports, the complaint, and the plea transcript from the district court file on the speeding and careless-driving charges against Ward; (2) statements and documents relating to the internal-affairs investigation of Ward; (3) accident reports, laboratory reports, and crash data from the Minnesota State Patrol; (4) Anzures's October and December 2009 statements and the complaint in her negligence

action; (5) statements by witnesses to the accident and photographs of the accident scene; and (6) notes and a finding from an accident-review-board meeting.

Ward filed a cross-claim against the city, seeking a judgment awarding her all costs, disbursements, and reasonable attorney fees incurred in defending against Anzures's lawsuit and "full and complete contribution and indemnity" for any judgment or recovery that Anzures obtained against Ward. Ward moved for summary judgment, arguing that she is entitled to defense and indemnification by the city as a matter of law. The city moved to dismiss Ward's cross-claim on the ground that the district court lacked subject-matter jurisdiction to decide the claim. The district court denied both parties' motions. This appeal followed.

**ISSUE**

Did the district court have subject-matter jurisdiction over Ward's cross-claim?

**ANALYSIS**

"Jurisdiction is a question of law that we review de novo." *In re Comm'r of Pub. Safety*, 735 N.W.2d 706, 710 (Minn. 2007) (quotation omitted).

> Subject-matter jurisdiction is the court's authority to hear the type of dispute at issue and to grant the type of relief sought. The question of whether subject-matter jurisdiction exists is a question of law for the court. Defects in subject-matter jurisdiction may be raised at any time, and cannot be waived by the parties.

*Seehus v. Bor-Son Constr., Inc.*, 783 N.W.2d 144, 147 (Minn. 2010) (citations omitted); *see also Willis v. County of Sherburne*, 555 N.W.2d 277, 279 n.1 (Minn. 1996) (stating that

4

"order denying a motion to dismiss for lack of jurisdiction is immediately appealable of right").

If no right of review is provided by statute or appellate rules, a quasi-judicial decision of a municipality is reviewable only by certiorari. *County of Washington v. City of Oak Park Heights*, 818 N.W.2d 533, 539 (Minn. 2012). "If a writ of certiorari . . . is the exclusive method by which to challenge a municipality's decision, then the district court lacks subject matter jurisdiction to hear the case." *Id.* at 538. The failure to obtain a timely writ of certiorari precludes review. *See In re Occupational License of Haymes*, 444 N.W.2d 257, 259 (Minn. 1989) (reversing review on merits of quasi-judicial decision because of failure to timely petition for writ of certiorari).

The district court relied on *Nelson v. Schlener*, 859 N.W.2d 288 (Minn. 2015), to support its conclusion that it had subject-matter jurisdiction over Ward's cross-claim. That case involved construction of the statute that establishes the state's obligation to defend and indemnify state employees against claims "arising out of an alleged act or omission occurring during the period of employment . . . if the employee was acting within the scope of employment." Minn. Stat. § 3.736, subd. 9 (2016). The statute provides:

> Except for elected employees, an employee is conclusively presumed to have been acting within the scope of employment if the employee's appointing authority issues a certificate to that effect. This determination may be overruled by the attorney general. The determination of whether an employee was acting within the scope of employment is a question of fact *to be determined by the trier of fact* based upon the circumstances of each case:
>> (i) in the absence of a certification,
>> (ii) if a certification is overruled by the attorney general,
>> (iii) if an unfavorable certification is made, or

5

(iv) with respect to an elected official.
The absence of the certification or an unfavorable certification is not evidence relevant to a determination by the trier of fact.

*Id.* (emphasis added).

The supreme court concluded that the term "'trier of fact' refers to a fact-finding body such as a district court" and "not the employing agency or an appellate court." *Nelson*, 859 N.W.2d at 295. Therefore, the supreme court held that Minn. Stat. § 3.736, subd. 9, provides a right of review of the agency decision that the employee had not acted within the scope of his employment and that the court of appeals did not have subject-matter jurisdiction to hear the employee's petition for a writ of certiorari seeking review of the agency's decision. *Id.* at 294-95. The supreme court explained:

> The agency, as the employee's appointing authority, has the opportunity under the statute to certify that the employee's conduct was within the scope of employment. It is only after the employer does not so certify, or the attorney general overrules the employer's certification, that the "trier of fact" is called upon to make the scope-of-employment determination. If the "trier of fact" is simply the employer again, the employer's initial certification decision is superfluous, and the attorney general's authority to overrule the employer's certification is essentially meaningless. Our obligation, however, is to read the statute so that all of the statute's terms are effective.

> Moreover, the term "trier of fact" implies an objective determination by a neutral party weighing competing factual claims. It is difficult to view the agency as an objective trier of fact when it made the scope-of-employment decision in the first instance. The Legislature also uses different words to describe the responsibilities of the trier of fact and those of the employer-agency. The Legislature uses the word "case" when describing the trier of fact's responsibilities, and the words "claim" and "demand" to describe the issues for which an employee can seek defense and indemnification. When the

6

> Legislature uses different words, we normally presume that those words have different meanings. The Legislature's use of the word "case" when describing the trier of fact's activities, and its use of the words "claim" and "demand" when describing the employer-agency's responsibilities, confirms the legislative intent that the "trier of fact" and the employer-agency are distinct entities that play different roles in the context of requests for defense and indemnification.

*Id.* (citations omitted).

The statute at issue in this case states:

> [A] municipality or an instrumentality of a municipality shall defend and indemnify any of its officers and employees, whether elective or appointive, for damages, including punitive damages, claimed or levied against the officer or employee, provided that the officer or employee:
> (1) was acting in the performance of the duties of the position; and
> (2) was not guilty of malfeasance in office, willful neglect of duty, or bad faith.

Minn. Stat. § 466.07, subd. 1.

In contrast to section 3.736, section 466.07 does not use the phrase "trier of fact," refer to a "case" as opposed to a "claim" or a "demand," or set forth a multi-step, multi-actor process for determining whether an employee was acting in the performance of the duties of the position such that the employee may be entitled to defense and indemnification. *Id.*; *cf. Nelson*, 859 N.W.2d at 293 (stating that Minn. Stat. § 3.736, subd. 9, "essentially provides a three-step process" for scope-of-employment determination, consisting of (1) appointing authority's certification that employee was acting within the scope of employment, (2) attorney general's opportunity to overrule any certification, and (3) possible resolution by trier of fact). Section 466.07 simply imposes on a municipality

7

a duty to defend and indemnify its employees and creates two exceptions to that duty, without specifying any process to determine whether the exceptions apply. Minn. Stat. § 466.07, subd. 1. In light of these differences between the two statutes, we decline to apply the *Nelson* holding to this case.

Our conclusion that *Nelson* does not control this case is supported by the rules of statutory interpretation. *See Nelson*, 859 N.W.2d at 292 ("Whether the process in Minn. Stat. § 3.736, subd. 9, is consistent with certiorari review in the court of appeals presents a question of statutory interpretation that we examine de novo."). In interpreting a statute, "[a court's] objective is to ascertain and effectuate the intent of the Legislature." *Id.*; *see also* Minn. Stat. § 645.16 (2016) ("The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature."). "If a statute is susceptible to only one reasonable interpretation, [a court] interpret[s] the statute according to its plain meaning." *Nelson*, 859 N.W.2d at 292. "Plain meaning presupposes the ordinary usage of words that are not technically used or statutorily defined . . . and draws from the full-act context of the statutory provision." *Occhino v. Grover*, 640 N.W.2d 357, 359 (Minn. App. 2002), *review denied* (Minn. May 28, 2002).

Section 466.07 is part of a chapter that addresses the tort liability of political subdivisions. *See generally* Minn. Stat. §§ 466.01-.15 (2016). Several sections in chapter 466 authorize decision-making or other actions by municipalities facing potential or actual tort liability. *See, e.g.*, Minn. Stat. §§ 466.06 (providing that "[t]he governing body of any municipality may procure insurance against liability of the municipality and its officers, employees, and agents for damages, including punitive damages, resulting from its torts

8

and those of its officers, employees, and agents"), .08 (providing that "the governing body of any municipality . . . may compromise . . . and settle tort claims against the municipality for damages . . . and may, subject to procedural requirements imposed by law or charter, appropriate money for the payment of amounts agreed upon"), .09 (providing that "[i]f [a] municipality has the authority to levy taxes and the judgment [entered against it] or settlement [made by it] is unpaid at the time of the annual tax levy, the governing body shall, if it finds that other funds are not available for payment of the judgment, levy a tax sufficient to pay the judgment or settlement"). And two sections of chapter 466 specifically refer to section 3.736, subdivision 9. *See* Minn. Stat. §§ 466.131, .132 (identifying circumstances under which municipality is treated as state employee for purposes of defense and indemnification under Minn. Stat. § 3.736, subd. 9).

In the context of chapter 466, which treats municipalities as actors and decision-makers in matters related to tort liability, section 466.07, subdivision 1, is subject to only one reasonable interpretation: A municipality is required to defend and indemnify its employee unless the municipality determines that the employee was not acting in the performance of the duties of the employee's position or was guilty of malfeasance in office, willful neglect of duty, or bad faith. The statute does not include a right of review of the municipality's determination. This interpretation is underscored by the legislature's incorporation of the section 3.736 indemnification provisions elsewhere in chapter 466 but not in section 466.07. *Cf. State v. Expose*, 872 N.W.2d 252, 258-59 (Minn. 2015) (stating that "[t]he inference to be drawn from the Legislature's decision to create exceptions to the therapist-client privilege in some statutes, but not others, is that it did not intend to create

9

an exception to the privilege in those statutes that do not mention the privilege"). Applying the *Nelson* holding to this case would add a review process to section 466.07. "[O]ne of [the] basic canons of statutory interpretation" is that "[courts] do not add words or phrases to an unambiguous statute." *County of Dakota v. Cameron*, 839 N.W.2d 700, 709 (Minn. 2013).

Because section 466.07 does not provide a right of review for Pietan's decision that Ward is not entitled to defense and indemnification by the City of St. Paul, the decision is reviewable only by certiorari if it was a quasi-judicial decision. The elements of a quasi-judicial decision are "(1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim." *Minn. Ctr. for Envtl. Advocacy v. Metro. Council*, 587 N.W.2d 838, 842 (Minn. 1999).

When investigating whether Ward was acting in the performance of her duties as a police officer when the accident occurred, Pietan considered documentary and other recorded evidence regarding the accident and the speeding and reckless-driving charges against Ward. That evidence included (1) incident reports, the complaint, and the plea transcript from the district court file on the speeding and careless-driving charges; (2) statements and documents relating to the internal-affairs investigation of Ward; (3) accident reports, laboratory reports, and crash data from the Minnesota State Patrol; (4) Anzures's October and December 2009 statements and the complaint in the negligence action; (5) statements by witnesses to the accident and photographs of the accident scene; and (6) notes and a finding from an accident-review-board meeting.

Citing *Minn. Ctr. for Envtl. Advocacy*, Ward argues that the investigation conducted by Pietan "was vastly different from the kind of investigation and weighing of evidence found in the typical judicial process, and therefore, it does not constitute a quasi-judicial decision." In *Minn. Ctr. for Envtl. Advocacy*, the supreme court concluded that the metropolitan council's approval of a transportation improvement project did not satisfy the first element of a quasi-judicial decision. 587 N.W.2d at 843. The court explained:

> It is clear that the research and public comment aspects of respondent's deliberative process is far more typical of a legislative proceeding than of a judicial proceeding. While the ultimate goal of both proceedings is to reach an informed decision on relevant and sometimes conflicting facts, the similarities end there. Respondent takes no evidence in accordance with formal or informal evidentiary rules, testimony is not given under oath, and there are no formally identified parties to the proceeding offering evidence to support a legal claim. Respondent's decisions, as with other governmental agencies, are guided by both objective information and public input. We conclude that respondent's gathering and consideration of information is vastly different from the judicial process of determining facts for the purpose of reaching a legal conclusion in resolution of adversarial claims . . . .

*Id.* at 842-43.

Here, Pietan informally accepted evidence, the city and Ward were formally identified as parties to the proceeding, the city submitted evidence relevant to whether Ward was entitled to defense and indemnification from the city, Ward was offered an opportunity to submit evidence but declined to do so, and Ward was represented by an attorney. After considering the evidence, Pietan made findings of fact. Pietan then applied those facts to the standard prescribed by Minn. Stat. § 466.07, subd. 1, and determined that,

11

when the accident happened, Ward was not acting in the performance of her duties as a police officer and that she acted with malfeasance, willful neglect of duty, or bad faith. Pietan's actions fulfilled the first two elements of a quasi-judicial decision.

Ward argues that the city attorney's April 10, 2015 letter did not constitute a binding decision because it did not state or indicate that the "letter will have a final and binding effect on [Ward's] legal rights" and did not state or indicate how Ward could challenge the city attorney's decision. Ward cites no authority stating that such information is required for a decision to be binding.

Ward also argues that the letter did not satisfy the third element of a quasi-judicial decision because it is not binding on her automobile insurance carrier and its right of subrogation. While there may be circumstances in which a municipality's decision could have collateral-estoppel effect, caselaw does not require that, for a decision to be quasi-judicial, it must have collateral-estoppel effect in future legal proceedings. *Cf. Graham v. Special Sch. Dist. No. 1*, 472 N.W.2d 114, 115-16 (Minn. 1991) (stating that collateral estoppel may apply to agency's quasi-judicial decisions and listing requirements for application of collateral estoppel).

Finally, Ward argues that the city attorney did not have authority to make a quasi-judicial decision affecting a city employee's legal rights without the city council's approval and oversight. The city's charter states, "The city attorney shall represent the city in all causes in which the city is interested and shall have full and complete charge of the legal business of the city." St. Paul, Minn., City Charter § 5.02 (1989). The city's administrative code contains functionally identical language. St. Paul, Minn., Administrative Code § 3.02

12

(2013).  This language is broad enough to permit the city attorney to decide whether an employee is entitled to defense and indemnification under Minn. Stat. § 466.07, subd. 1. Thus, the city attorney's April 10, 2015 letter constituted a binding decision and fulfilled the third element of a quasi-judicial decision.

The city's decision that Ward is not entitled to defense and indemnification under section 466.07, subdivision 1, against Anzures's negligence action meets the requirements for a quasi-judicial decision.  Because no right of review is provided by statute or appellate rule, a writ of certiorari is the exclusive method by which to challenge the decision, and the district court lacked subject-matter jurisdiction to hear Ward's cross-claim.  *See County of Washington*, 818 N.W.2d at 538-39.

## D E C I S I O N

Because the district court lacked subject-matter jurisdiction to hear Ward's cross-claim, the district court erred in denying the city's motion to dismiss the cross-claim.

**Reversed.**